IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE WALKER, | : | Civil No. 1:17-CV-2371 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| C.O. STUDLACK, | : | |
| | : | |
| **Defendant.** | : | |

# MEMORANDUM OPINION AND ORDER

## I. Factual Background

In 2017, Antoine Walker, a state inmate, filed this *pro se* prisoner civil rights lawsuit against the defendant, Correctional Officer Ralph Studlack. In his complaint, Walker alleges that Studlack violated his Eighth Amendment right to be free from cruel and unusual punishment when he indulged in the use of excessive force against Walker during a September 26, 2017 encounter between this inmate and correctional officer at SCI Coal Township. According to Walker this use of excessive force by Studlack was the culmination of a mutual antipathy between Walker and Studlack, antipathy instigated by Studlack's alleged verbal sexual harassment of Walker.

In the wake of this affray, the shift commander on duty, Shawn Scicchitano, prepared an Extraordinary Occurrence Report. It appears uncontested that

1

Scicchitano was not an eyewitness to these events, but prepared the report following the altercation between Walker and Studlack. According to the plaintiff's counsel, the report:

> [C]ontains clerical entries such as the time of the incident, the parties, and category of occurrence. Importantly, it also contains an "Occurrence Description," a factual summary of the events by a non-witness, here Scicchitano, who reviewed the evidence submitted by other witnesses (Department of Corrections employees).

(Doc. 120, at 2 n.2).

Thus, the report, which was produced in a highly redacted form under seal, (Doc. 131), appears to provide a second hand, after-the-fact-account of these events, along with some conclusions and opinions by its author, as well as some alleged details regarding Walker's prior criminal conviction.

According to Walker, the defense has stated that they intend to offer the report in evidence at trial. Walker has filed a motion *in limine* seeking to exclude this report from evidence in the trial of this case. (Doc. 119). In this motion *in limine*, Walker objects to the admission of the report. According to Walker, introduction of the report is improper because: (1) the report is irrelevant; (2) the observations and conclusions made by Shift Commander Scicchitano after-the fact are not admissible under Rules 701 and 602 of the Federal Rules of Evidence; and (3) some of the

information contained in the report, including Walker's prior criminal conviction, is unduly prejudicial. This motion is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, we find that there are many legal obstacles to the introduction of this report into evidence. Those obstacles have not yet been overcome in our view. Therefore, absent some further showing of admissibility we will exclude this evidence. However, we do so without prejudice to the defense endeavoring to make a more fulsome showing of relevance and admissibility outside the presence of the jury if defense counsel chooses to do so.

## II. Discussion

In considering the admissibility of this Extraordinary Occurrence Report, we note that the Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the

3

evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine*, which call upon the Court to engage in preliminary evidentiary rulings, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" Abrams v. Lightolier Inc. 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court, and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts

is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Adopting this view of relevance, it has been held that:

> Under [Rule] 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [Therefore] "[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant."

Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994)) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be

5

admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). These principles favoring inclusion of evidence are, however, tempered by specific rules which deem certain classes of evidence inadmissible.

In the first instance, it is well-settled that, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. This rule seems to present a threshold hurdle to the admission of Shift Commander Scicchitano's report since all parties appear to concede that the witness did not have direct personal knowledge of the matters set forth in the report.

Likewise, Walker asserts that the opinions and conclusions made by Captain Scicchitano in this report would not be admissible under 701 of the Federal Rules of Evidence, which limits lay opinion testimony, stating that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception; [and]
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue

Fed. R. Evid. 701.

Once again Rule 701 seems to premise lay opinion testimony upon matters that are "rationally based on the witness' perception." Since Captain Scicchitano apparently did not perceive these events, Rule 701 may not provide a clear avenue to the admission of the report and any opinions set forth in that report.

For his part, Defendant Studlack endeavors to overcome these evidentiary hurdles by apparently arguing that the report falls within the public record exception to the hearsay rules.[1] We agree that efforts to introduce this report into evidence may also implicate the hearsay rules. Indeed, we have in the past observed that the rules governing hearsay apply to Extraordinary Event Reports prepared in a prison setting. Victor v. Lawler, No. 3:08-CV-01374, 2010 WL 2595945, at *3 (M.D. Pa. June 24, 2010). However, we note that the longstanding rules forbidding hearsay testimony are one of the principal and settled limitations on the admissibility of proffered evidence. The historic common law prohibition against hearsay testimony is expressly incorporated into the Federal Rules of Evidence. Those rules define hearsay as "a statement that: **(1)** the declarant does not make while testifying at the

---

[1] We note that the defense specifically cites to Rule 803(8)(c) of the Federal Rules of Evidence in their response to this motion. Because Rule 803(8) does not currently appear to have a subsection c we would seek further clarification from the defense of the precise basis for their claim that this report falls within a recognized hearsay exception.

current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "Hearsay is not admissible unless" the proffered statement falls within one of a myriad of specific exceptions recognized by the Federal Rules of Evidence or other laws. Fed. R. Evid. 802. Further, when records contain hearsay within hearsay, it is incumbent upon the proponent of that evidence to demonstrate that each layer of hearsay is independently admissible under a recognized exception to the hearsay rules before the evidence may be introduced. Fed. R. Evid. 805. Moreover, the proponent of this evidence bears the burden of proving that particular evidence falls within a recognized hearsay exception. Therefore, these are the hearsay hurdles the defense must cross in order to use this report at trial.

In our view, in this case it is impossible based upon a reading of the factual narrative portion of this heavily redacted document to peel back what may be the various layers of hearsay embedded in this factual narrative which purports to described the actions and observations of multiple actors. Moreover, given the evident lack of personal knowledge of these events on the part of the report's author we cannot say that the defense has met its burden of proof regarding whether legal grounds exist for the wholesale admission of the redacted report.

Beyond these threshold considerations of relevance and admissibility, Rule

403 of the Federal Rules of Evidence also provides for the exclusion of some potentially relevant but highly prejudicial evidence, stating that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

Rule 403 presents yet another obstacle to the wholesale introduction of this Extraordinary Occurrence Report at trial since the report contains an otherwise unexplained notation that speaks to the ultimate issue in this lawsuit; namely, a notation stating that "minimum force [was] used to gain inmate compliance." (Doc. 131 at 3). This unexplained assertion, presumably reflecting the opinion of an official who did not have direct first-hand knowledge of these events, would be both inadmissible and highly prejudicial. Absent some more through explanation of the

9

relevance and admissibility of this evidence, these considerations of potential prejudice caution against its admission at trial.

Moreover, the redacted report contains information which purports to describe Walker's prior criminal history and conviction. For his part, Defendant Studlack concedes that the report makes allegations regarding Walker's prior conviction, but suggests that this information is not unfairly prejudicial because Walker may be impeached at trial with this prior conviction. See Fed. R. Evid. 609. In our view, there are two difficulties with this contention, First, as a factual matter it appears that this report misstates the precise nature of Walker's conviction. The report indicates that Walker was convicted of First Degree Murder. However, it appears that Walker's charge of conviction, while grave, was a different offense, attempted homicide. Commonwealth v. Walker, CP-36-CR-0003825-2010. Therefore, the report's factual inaccuracy weighs heavily against its admission.

Moreover, as a legal matter this argument, which equates impeachment with substantive evidence, is unpersuasive. While we agree that this prior conviction may be used to impeach Walker if he testifies at trial, we do not believe that this rejoinder fully addresses Walker's concerns regarding undue prejudice because it conflates the use of a conviction to impeach with the presentation of a conviction as substantive evidence. Should Walker testify he may well be impeached by this

conviction, but the plaintiff would also be entitled to a specific cautionary instruction strictly limiting the use of the conviction for impeachment purposes only. On the other hand, should the conviction be set forth inaccurately in a report that is introduced at trial as substantive evidence, the careful and well-defined limitations on the proper consideration of the prior conviction only to impeach may be lost to the prejudice of the plaintiff.

While we note these concerns raised by the potential use of this report at trial, we remain mindful that we should often exercise caution in this field. In this regard, we recognize that:

> Parties frequently invite courts to make pre-trial rulings on issues of prejudice, relevance and admissibility through motions *in limine*. The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted.... Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage...."). Moreover, the Third Circuit has characterized Rule 403, the rule permitting exclusion of evidence, as a "trial-oriented rule" and has warned that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are ... unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Keiser v. Borough of Carlisle, No. 1:15-CV-450, 2017 WL 4053686, at *2 (M.D. Pa. Sept. 13, 2017).

This is the course we will follow in the instant case. Thus, absent some further showing of admissibility we will exclude this evidence. However, we do so without prejudice to the defense endeavoring to make a more fulsome showing of relevance and admissibility outside the presence of the jury if defense counsel chooses to do so.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTOINE WALKER,** | : | **Civil No. 1:17-CV-2371** |
| **Plaintiff,** | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| **C.O. STUDLACK,** | : | |
| **Defendant.** | : | |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, with respect to the Plaintiff's Motion *In Limine* which seeks the exclusion of an Extraordinary Occurrence Report prepared in this case, (Doc. 119), IT IS ORDERED that the motion is GRANTED without prejudice in that, absent some further showing of admissibility, we will exclude this evidence. However, we do so without prejudice to the defense endeavoring to make a more fulsome showing of relevance and admissibility outside the presence of the jury if defense counsel chooses to do so.

*ss/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:   January 31, 2022.