IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE WALKER, | : | Civil No. 1:17-CV-2371 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| C.O. STUDLACK, | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION AND ORDER

**I.     Factual Background**

In 2017, Antoine Walker, a state inmate, filed this *pro se* prisoner civil rights lawsuit against the defendant, Correctional Officer Ralph Studlack. In his complaint, Walker alleges that Studlack violated his Eighth Amendment right to be free from cruel and unusual punishment when he indulged in the use of excessive force against Walker during a September 26, 2017 encounter between this inmate and correctional officer at SCI Coal Township. According to Walker, this use of excessive force by Studlack was the culmination of a mutual antipathy between Walker and Studlack, antipathy instigated by Studlack's alleged verbal sexual harassment of Walker.

Walker had reported this alleged sexual harassment by Studlack as a potential violation of the Prison Rape Elimination Act (PREA), and an investigation was

1

undertaken into these allegations by Lt. Brownawell, who produced a report which allegedly contains summaries of witness statements by an unidentified inmate, Defendant Studlack, and two other correctional staff, Lt. Carpentier and Brenda Greco.[1]

According to Walker, the defense has stated that they intend to offer the report in evidence at trial. Walker has filed a motion *in limine* seeking to exclude this report from evidence in the trial of this case. (Doc. 127). In this motion *in limine*, Walker objects to the admission of these four summary witness statements in this report. According to Walker, these summary witness statements constitute unduly prejudicial and inadmissible hearsay. This motion is fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, we will grant this motion, in part, and will defer any final rulings regarding some of these witness summaries until trial. Specifically, we will grant the motion with respect to the summary report of an

---

[1] The PREA report has been filed under seal as Doc. 131. The unidentified inmate's interview report indicates that Walker had been complaining about verbal, racial, and sexual harassment by correctional staff prior to this incident, and indicated that he intended to assault the officer in an effort to secure a transfer. Studlack's reports of interview denied Walker's allegations. The summaries of the interviews of Lt. Carpentier and Brenda Greco described what they observed on September 26, 2017.

2

interview with an unidentified inmate, but defer ruling upon the introduction of reports of interviews with Defendant Studlack or Brenda Greco until trial.

## II. Discussion

In considering the admissibility of summary witness statements contained in this PREA investigative report, we note that the Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine*, which call upon the Court to engage in preliminary evidentiary rulings, we begin by recognizing that these "evidentiary

3

rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" Abrams v. Lightolier Inc. 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating, "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Adopting this view of relevance, it has been held that:

> Under [Rule] 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [Therefore] "[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant."

Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994)) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). These principles favoring inclusion of evidence are, however, tempered by specific rules which deem certain classes of evidence inadmissible.

On this score, the longstanding rules forbidding hearsay testimony are one of the principal and settled limitations on the admissibility of proffered evidence. The historic common law prohibition against hearsay testimony is expressly incorporated into the Federal Rules of Evidence. Those rules define hearsay as "a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "Hearsay is not admissible unless" the proffered statement falls within one of a myriad of specific exceptions recognized by the Federal Rules of Evidence or other laws. Fed. R. Evid. 802. Further, when records contain hearsay within hearsay, it is incumbent upon the proponent of that evidence to demonstrate that each layer of hearsay is independently admissible under a recognized exception to the hearsay rules before the evidence may be introduced. Fed. R. Evid. 805. While many of these hearsay exceptions are narrowly and specifically tailored, see Fed. R. Evid 803 and 804, the rules also contain a so-called residual exception which provides that:

> **(a) In General.** Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
> **(1)** the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

> **(2)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807.

As the proponent of otherwise hearsay evidence, the defense bears the burden of proof and persuasion on the question of whether proffered evidence falls within a recognized hearsay exception. Therefore, these are the hearsay hurdles the defense must cross in order to use the summary witness statements contained in this report at trial.

Turning to the contested witness summaries at issue here, they purport to reflect statements from four individuals: an unidentified inmate, Defendant Studlack, and two other correctional staff, Lt. Carpentier and Brenda Greco. As to the unidentified inmate, the witness interview summary describes a report by this prisoner that Walker had been complaining about verbal racial and sexual harassment by correctional staff prior to this incident, and indicated that he intended to assault an officer in an effort to secure a transfer.

The defense contends that this statement carries sufficient guarantees of trustworthiness that it is admissible under Rule 807's residual exception to the hearsay rule. We disagree. In this regard, we note that:

> The Rule 807 residual hearsay exception is "to be used only rarely, and in exceptional circumstances," and is meant to "apply only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." United States v. Bailey, 581 F.2d 341, 347 (3d Cir.1978) (addressing the old residual hearsay exceptions contained in Rules 803(24) and 804(b)(5), which were combined and transferred to the new Rule 807 in 1997). In assessing the guarantees of trustworthiness, factors to consider include whether: (1) the declarant was known and named; (2) the statement was made under oath; (3) the declarant knew his assertions were subject to cross-examination; (4) the statement was based on personal knowledge; (5) the declarant had motivation to lie; (6) the statement was corroborated; and (7) the declarant was qualified to make the assertion. See Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 113 (3d Cir.2001).

United States v. Wilson, 281 F. App'x 96, 99 (3d Cir. 2008).

In this case, we do not find that this statement is cloaked in "exceptional guarantees of trustworthiness," as required by Rule 807. Indeed, we do not even know the identity of the declarant, a factor that would be essential to any trustworthiness determination. Thus, we cannot ascertain the motivation of the declarant.[2] Moreover, the statement was not made under oath and was not subject to

---

[2] For his part, the defendant speculates that the statement is inherently reliable because it was made against the inmate's self-interest. The defense, however, presents no evidence in support of this speculation, and it is equally possible to speculate that the declarant could have been motivated by animus against Walker or a desire to curry favor with prison officials. Given the complete evidentiary void on this score, we simply cannot make any informed judgments regarding the declarant's motivation which would support the introduction of this evidence.

8

any form of cross-examination. Therefore, finding that the factors which govern admissibility of evidence under Rule 807 weigh against the introduction of this report from an unknown declarant, we will exclude the statement of this anonymous declarant from the trial of this case.

As for Defendant Studlack's interview summaries, the defense proposes a narrow, and presently hypothetical, basis for their admission at trial—the past recollection recorded exception to the hearsay rule. This hearsay exception is embodied in Rule 803(5) of the Federal Rules of Evidence, which provides that the following statements are not excluded from evidence as hearsay:

> **Recorded Recollection.** A record that:
> **(A)** is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
> **(B)** was made or adopted by the witness when the matter was fresh in the witness's memory; and
> **(C)** accurately reflects the witness's knowledge.

Fed. R. Evid. 803(5).

By its terms, there are a number of conditions precedent to the admission of an otherwise hearsay statement under Rule 803(5). First, the witness—in this case Defendant Studlack—must credibly establish a complete failure of recollection. Second, it must be shown that the prior witness summary was made at a time when Studlack could recall these events and that it accurately reflected Studlack's

9

recollection of his encounters with Walker in September of 2017. This is an exceedingly high burden to meet, but we cannot decide this issue in the abstract. Rather, we must await the trial testimony of Defendant Studlack to determine whether these conditions precedent have been satisfied. Therefore, we will defer ruling upon this hearsay objection until trial and the testimony of Defendant Studlack.

Finally, it is alleged that the defense may attempt to introduce summary witness statements from Lt. Carpentier and a former correctional officer, Brenda Greco. These two declarants were allegedly present on September 26, 2017 and witnessed the encounter between Walker and Studlack. As for Lt. Carpentier, the issue of the admissibility of this prior interview summary may be moot since in response to this motion *in limine* the defense has stated that "Defendant had not originally planned to call Lt. Carpentier, but would be open to amending their witness list to remedy this concern." (Doc. 140, at 6). We believe that this would be the appropriate course to follow in this case to avoid the hearsay concerns cited by Walker.

However, with respect to Brenda Greco, it is averred that she has passed away. Therefore, the defense seeks to introduce her report of interview as a business record

under Rule 803(6). Reliance upon this hearsay exception entails multiple elements of proof. As one court has explained:

> As a threshold matter, the proponent of the documentary evidence must establish the source of the contested information, that is, (1) the author of the document had personal knowledge of the matters reported; (2) the information he reported was transmitted by another person who had personal knowledge, acting in the course of a regularly conducted activity; or (3) it was the author's regular practice to record information transmitted by persons who had personal knowledge. See Missimer v. Tiger Machine Co., No. 04–3443, 2005 WL 3968133, at *2 (E.D.Pa. Sept. 28, 2005). In addition, the proponent must establish the information was kept in the regular course of ATI's business, and it was ATI's regular practice to prepare such reports. See Fed.R.Evid. 803(6); United States v. Pelullo, 964 F.2d 193, 200 (3d Cir.1992) (for business record exception to apply, proponent must establish "(1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business").
>
> "The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and '[t]he very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision.'" See Tenney v. City of Allentown, No. 03–3471, 2004 WL 2755538, at *1 (E.D.Pa. Nov. 30, 2004) (Sanchez, J.) (quoting McCormick on Evidence § 286 5th ed.). "This assumption of reliability, accuracy and trustworthiness, however, collapses when 'any person in the process is not acting in the regular course of the business.'" Id. (quoting McCormick on Evidence § 290). Thus, each participant in the chain producing the record, from the initial observer-reporter to the final entrant, must be acting in the course of a regularly conducted business activity, see e.g., United States v. Vigneau, 187

11

F.3d 70, 75 (1st Cir.1999) (information in business records provided by someone other than person with duty to gather such information in ordinary course of business is inadmissible hearsay and must be redacted from business record prior to its admission); United States v. McIntyre, 997 F.2d 687, 698–99 (10th Cir.1993) (motel registration cards should not have been admitted, as guests were not under business obligation to provide the information), or must meet another hearsay exception.

In addition, records prepared in anticipation of litigation are not made in the ordinary course of business, see Palmer v. Hoffman, 318 U.S. 109, 114, 63 S.Ct. 477, 87 L.Ed. 645 (1943); (reports prepared for the purpose of litigation do not fall within business records exception to hearsay rule because they are not kept in the course of regularly conducted business); Timberlake Const. Co. v. U.S. Fidelity and Guar. Co., 71 F.3d 335, 342 (10th Cir.1995) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business."); United States v. Casoni, 950 F.2d 893, 911, n. 10 (3d Cir.1991). Such records lose the assumption of trustworthiness. Cf. Wertz v. Consolidated Rail Corp., No. 91–5093, 1993 WL 327819, at *4 (E.D.Pa. Aug. 16, 1993) (finding report trustworthy as business record because it was not prepared in anticipation of litigation).

AAMCO Transmissions, Inc. v. Baker, 591 F. Supp. 2d 788, 793–94 (E.D. Pa. 2008).

Accordingly, the defense would have to meet all of these elements before we could consider admission of this interview summary as a business record. But even if all of these elements were satisfied, we would still have to determine whether this report of interview was unduly prejudicial and cumulative of other evidence and should be excluded under Rule 403 of the Federal Rules of Evidence. Rule 403

12

provides for the exclusion of some potentially relevant but highly prejudicial evidence, stating that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

In our view, Rule 403 may present yet another obstacle to the introduction of any summary of witness statements provided by Brenda Greco since it is evident that numerous other prescient witnesses who observed this September 26, 2017 confrontation are available and will be called at trial. Therefore, it may well be that this additional, arguably hearsay statement may be subject to exclusion both as unduly prejudicial and unnecessarily cumulative. While we note these concerns raised by the potential use of this interview report at trial, we recognize that we should often exercise caution in this field. In this regard, we recognize that:

> Parties frequently invite courts to make pre-trial rulings on issues of prejudice, relevance and admissibility through motions *in limine*. The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted.... Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage...."). Moreover, the Third Circuit has characterized Rule 403, the rule permitting exclusion of evidence, as a "trial-oriented rule" and has warned that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are ... unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Keiser v. Borough of Carlisle, No. 1:15-CV-450, 2017 WL 4053686, at *2 (M.D. Pa. Sept. 13, 2017).

This is the course we will follow in the instant case. Thus, we will defer any final rulings regarding the admissibility of Brenda Greco's witness statement, in accordance with the principles outlined in this memorandum opinion, until trial when we can assess the probative value, prejudicial impact, and potentially cumulative nature of this evidence on a fully developed factual rerecord.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTOINE WALKER,** | : | **Civil No. 1:17-CV-2371** |
| **Plaintiff,** | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| **C.O. STUDLACK,** | : | |
| **Defendant.** | : | |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, with respect to the Plaintiff's Motion *In Limine* which seeks the exclusion of certain PREA report witness interview summaries, (Doc. 127), IT IS ORDERED that the motion is GRANTED, in part, and DEFERRED in part as follows: Specifically, we will grant the motion with respect to the summary report of an interview with an unidentified inmate, but defer ruling upon the introduction of reports of interviews with Defendant Studlack or Brenda Greco until trial.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:   January 31, 2022.