IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTOINE WALKER,** | : | Civil No. 1:17-CV-2371 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **C.O. STUDLACK,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.  Factual Background

This case, which comes before us for consideration of a defense motion *in limine*, (Doc. 121), invites us to examine both the vagaries of discovery practice in *pro se* prisoner litigation, as well as the scope of various exceptions to the hearsay rule.

In 2017, Antoine Walker, a state inmate, filed this *pro se* prisoner civil rights lawsuit against the defendant, Correctional Officer Ralph Studlack. In his complaint, Walker alleges that Studlack violated his Eighth Amendment right to be free from cruel and unusual punishment when he indulged in the use of excessive force against Walker during a September 26, 2017 encounter between this inmate and correctional officer at SCI Coal Township. According to Walker, this use of excessive force by

Studlack was the culmination of a mutual antipathy between Walker and Studlack, antipathy instigated by Studlack's alleged verbal sexual harassment of Walker.

Walker initially represented himself through the discovery phase of this litigation. In the course of this discovery, the defendant propounded an interrogatory upon Walker which asked him to identify the name, address, and telephone number of each individual believed to have discoverable information that Walker may use as a witness to support his claim that he was the victim of excessive force on September 26, 2017. Walker responded to this interrogatory by stating that: "All my witnesses are inmates at [SCI Coal Township]. I'm still trying to identify them. They are kitchen workers at SCI-Coal. And some staff members involved in the incident." In another interrogatory, the defendant asked Walker to identify inmates with knowledge about an allegedly improper pat-down search Studlack performed on Walker on September 22, 2017, approximately four days prior to the excessive force incident which forms the basis for this Eighth Amendment claim. After describing the improper pat-down search and naming the Department of Corrections' employees that were present, Walker responded to this interrogatory by stating that "I will have to get a list of inmates who were getting laundry on the morning of September 22, 2017. Mr. Fellin, the laundry supervisor, will have to produce that list. Multiple inmates were in laundry that morning."

2

As Walker was responding to the discovery demands propounded by the defense, he was forwarding his own, closely related, discovery demands to the defense. In particular, Walker asked the defense to produce, "A list of all inmate kitchen workers who were leaving the kitchen on September 26, 2017 at approx. 9:30am," as well as "[a] list of all inmates who were working laundry on September 22, 2017 along with a list of inmates who were waiting to receive laundry that day," explaining that "[m]y attempts to reach [the supervisor] have gone unanswered." Thus, Walker's discovery demands propounded on the defense were designed to further flesh out his own replies to the discovery propounded upon him by ascertaining the names of inmates who were present on September 22 and 26, 2017.

In response to Walker's inquiry regarding inmate laundry-unit workers, the defense provided Walker with a list of names which included inmate Alvin Starks, the prisoner whose proposed testimony is the subject of this motion *in limine*. Given the relationship between these discovery demands exchanged by the parties, this defense response to Walker's discovery request was, in effect, also a partial supplemental reply to their own discovery demands since it identified, albeit in an elliptical fashion, some of Walker's potential inmate witnesses.

Following protracted pretrial proceedings in which Walker represented himself, counsel was appointed for the plaintiff and this case is now proceeding to

trial in February of 2022. As the parties prepared for trial, the recently appointed plaintiff's counsel identified inmate Alvin Starks as a potential witness in this case and have provided the following proffer regarding the proposed testimony of Inmate Starks:

> Starks will testify that he knew Walker suffered from Studlack's abusive, derogatory name-calling. He will also testify that he encouraged Walker to file a Prison Rape Elimination Act Complaint or Grievance against Studlack to remedy the abuse. These conversations and events took place prior to the pat-down search. Starks will not testify to witnessing the pat-down search because he was in a shift change at the relevant time.

(Doc. 139, at 5). Thus, it appears that Starks is not a prescient witness to the events of September 22 or 26, 2017. Instead, his proffered testimony would be limited to recounting statements made by Walker sometime prior to the incidents that form the basis for this Eighth Amendment claim.

It is against this factual backdrop that the defendant has filed a motion *in limine* seeking to exclude Starks' testimony. In support of this motion, Studlack advances a twofold argument: (1) asserting that Starks's testimony should be excluded as a discovery sanction under Rule 37 of the Federal Rules of Civil procedure since the plaintiff failed to disclose the identity of this witness in a timely fashion; and (2) contending that Starks' account of statements attributed to Walker sometime before the events directly at issue in this case is inadmissible hearsay.

For the reasons set forth below, the motion will be denied, in part, and deferred, in part, as follows: We will deny the request to exclude Inmate Starks' testimony pursuant to Rule 37. We will, however, permit the defense to re-open discovery for the purpose of deposing Starks. As for the defendant's hearsay, relevance, and prejudice objections, we will defer ruling upon those questions until they are presented to us on a fully developed factual record.

**II. Discussion**

**A. Exclusion of This Witness is Not Warranted Under Rule 37.**

At the outset, the defendant asks us to exclude the testimony of inmate Starks arguing that exclusion of this testimony is an appropriate discovery sanction in this case under Rule 37 because Walker did not identify Starks as a potential witness in a timely fashion.

Rule 37 sanctions practice is governed by familiar legal principles. As we have observed:

> Rule 37(c)(1) provides that if a party "fails to provide information or identify a witness as required in Rule 26(a) ... the party is not allowed to use that information or witness to supply evidence ... at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the non-producing party to prove substantial justification or that its failure to produce was harmless. U.S. Fire Ins. Co. v. Omnova Solutions, Inc., No. 10–1085, 2012 WL 5288783, at *2 (W.D. Pa. Oct. 23, 2012).

> The Third Circuit Court of Appeals has set forth several factors for courts to consider when deciding whether the exclusion of evidence is an appropriate sanction for the delayed production of evidence: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation." Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000) (citing Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997)). The Court has supplemented this list of factors to include: "(5) 'the importance of the excluded testimony' and (6) the party's explanation for failing to disclose." Dzielak v. Whirlpool Corp., 2017 WL 1034197, at *29 (D.N.J. Mar. 17, 2017) (citing Konstantopoulos, 112 F.3d at 719).
>
> However, we are reminded that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977) (internal citations omitted); Dzielak, 2017 WL 1034197, at *29.

R.D. v. Shohola, Inc., No. 3:16-CV-01056, 2019 WL 6211243, at *2 (M.D. Pa. Nov. 20, 2019).

Judged against these guideposts, we conclude that the extreme sanction of exclusion of this testimony is not appropriate in the instant case. At the outset, we observe that it is unclear that there has been a failure on the part of Walker to identify Starks as a potential witness. While this disclosure process has been somewhat obscure, Walker did identify September 22, 2017 laundry duty inmates as potential

6

witnesses. The defense then identified Stark as one of the prisoners who worked the laundry duty on September 22, 2017. Reading the discovery responses together, it appears that Starks was timely identified as a potential witness.

In any event, to the extent that there was some deficiency in this identification, we cannot say on these facts that this shortcoming reflected bad faith or willful misconduct by Walker, who himself had been seeking the names of these potential inmate witnesses. Further, Walker's proffer regarding the testimony of inmate Starks suggests that the inmate would simply testify to hearsay statements by the plaintiff complaining that he was verbally harassed by Officer Studlack. This allegation has been well-known to all parties since the inception of this lawsuit. Therefore, the risk of surprise or disruption of the trial due to the late identification of Starks as a witness seems small. Finally, mindful of the fact that exclusion of evidence under Rule 37 is an "extreme" sanction, and cognizant of the fact that we should explore whether there are alternate means to cure any prejudice resulting from a belated witness disclosure, we note that we could mitigate any prejudice here by allowing a deposition or examination of Starks out of the presence of the jury in advance of trial.

Therefore, finding that the discretionary factors we are enjoined to weigh under Rule 37 all caution against the exclusion of this evidence as a discovery

sanction under Rule 37, we will decline any request to preclude Starks' testimony on these grounds, but will favorably consider any defense request to re-open discovery for the limited purpose of deposing inmate Starks.

### B. We Will Defer a Determination Regarding Whether the Testimony of Inmate Starks is Impermissible Hearsay

The defendant's second objection to the proffered testimony of Inmate Starks is that this testimony consists hearsay relating to a largely undisputed and somewhat collateral issue. Preliminarily, we believe that this contention has greater persuasive power, but will defer any final ruling on this matter pending the development of a more fulsome factual record at trial.

In reaching this conclusion, we note that the Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial

8

and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

In considering motions *in limine*, which call upon the Court to engage in preliminary evidentiary rulings, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" Abrams v. Lightolier Inc. 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of

these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

> Adopting this view of relevance, it has been held that
>
> Under [Rule] 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [Therefore] "[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant."

Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994)) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402.

Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted). These principles favoring inclusion of evidence are, however, tempered by specific rules which deem certain classes of evidence inadmissible.

The longstanding rules forbidding hearsay testimony are one of the principal and settled limitations on the admissibility of proffered evidence. The historic common law prohibition against hearsay testimony is expressly incorporated into the Federal Rules of Evidence. Those rules define hearsay as "a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "Hearsay is not admissible" unless the proffered statement falls within one of a myriad of specific exceptions recognized by the Federal Rules of Evidence or other laws. Fed. R. Evid. 802. Thus, hearsay objections like the objections raised here, directly implicate our gate-keeping function regulating the introduction of evidence at trial.

In addition, beyond these threshold considerations of relevance and admissibility of hearsay statements, Rule 403 of the Federal Rules of Evidence provides for the exclusion of some potentially relevant but highly prejudicial

evidence, stating that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

Finally, while we possess the discretion to make such pretrial evidentiary rulings, we are reminded that we should often exercise caution in this field. In this regard, we recognize that:

> Parties frequently invite courts to make pre-trial rulings on issues of prejudice, relevance and admissibility through motions *in limine*. The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted.... Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage...."). Moreover, the Third Circuit

has characterized Rule 403, the rule permitting exclusion of evidence, as a "trial-oriented rule" and has warned that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are ... unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Keiser v. Borough of Carlisle, No. 1:15-CV-450, 2017 WL 4053686, at *2 (M.D. Pa. Sept. 13, 2017).

Judged against these benchmarks, we turn to a consideration of the of the hearsay implications of the proffered testimony of Alvin Starks. In undertaking this task, we agree with the parties that Starks' proffered testimony plainly implicates the rules forbidding hearsay testimony since it is clear that Starks was not a prescient witness to any of the critical events in this case, but rather merely plans to testify about conversations he had with Walker at some time prior to these events. Moreover, it appears that the plaintiff wishes to offer this testimony for the truth of the matters asserted by Walker. Under Rule 801 such testimony is, on its face, hearsay which should be excluded unless it falls within some specific exception to the hearsay rules.

Acknowledging this straightforward application of the hearsay rules, Walker nonetheless argues that this hearsay testimony should be permitted pursuant to Rule 803(3), which allows the introduction of "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or

13

physical condition (such as mental feeling, pain, or bodily health)," as an exception to the hearsay rule. Fed. R. Evid. 803(3).

While we applaud the imagination and initiative of court-appointed counsel on this score, in our view there are several problems with this argument. First, it may improperly conflate and confuse the purpose of this state of mind exception to the hearsay rule. This specific hearsay exception exists to prove a declarant's state of mind when that state of mind is relevant. It may not be transmogrified into a rule that allows for indirect proof of the truthfulness and accuracy of the declarant's belief. As one court has observed:

> "The rule is now firmly established that '[t]here are times when a state of mind, if relevant, may be proved by contemporaneous declarations of feeling or intent.' " United States v. Hernandez, 176 F.3d 719, 726–27 (3d Cir. 1999) (quoting Shepard v. United States, 290 U.S. 96, 104, 54 S.Ct. 22, 78 L.Ed. 196 (1933)). "Three requirements must be satisfied for a statement to be admissible under the state of mind exception to the hearsay rule: the statement must be contemporaneous with the mental state sought to be shown; there must be no circumstances suggesting a motive for the declarant to misrepresent her thoughts; and the declarant's state of mind must be relevant to an issue in the case." Phillips v. Potter, No. CIV.A.07–815, 2009 WL 3271238, at *3 (W.D.Pa. Oct. 9, 2009) (citing 5 JACK A. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 803.05 (2007)). "Statements admitted under Fed. R. Evid. 803(3) to show the declarant's intent or plan may be used to show that the declarant acted in accord with that plan." United States v. Donley, 878 F.2d 735, 738 (3d Cir. 1989). "However, the scope of this exception must be limited to prevent it from devouring the rule. Thus, '[s]tatements that are considered under ... the 'state of mind' exception, cannot be offered to prove the truth of the underlying facts asserted.'

" Hernandez, 176 F.3d at 727 (quoting Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1274 (3d Cir. 1995)). *In other words, statements that tend to prove the declarant's intent or state of mind regardless of the underlying truth are admissible, whereas statements that tend to prove the truth of the fact remembered are not admissible.* See Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc., 623 F.Supp.2d 518, 531 (D. Del. 2009).

Knit With v. Knitting Fever, Inc., 742 F.Supp.2d 568, 582 (E.D. Pa. 2010) (emphasis added).

This case aptly illustrates the crucial distinction under Rule 803(3) between statements that pertain to the declarant's state of mind, and those that attempt to prove the truth of the fact remembered. In this case, Walker's complaints regarding alleged verbal sexual harassment by C.O. Studlack are well known and well documented in his PREA complaint. Therefore, the fact that Walker made such complaints does not require the type of hearsay proof proffered by the plaintiff. Moreover, Walker's state of mind on this issue at some unidentified time prior to the incidents that form the basis of his excessive force claim has, at best, only very limited relevance to the question of whether Defendant Studlack violated the plaintiff's rights under the Eighth Amendment on September 26, 2017.

However, the introduction of this evidence under Rule 803(3)'s narrow state of mind exception is fraught with potential for prejudice since the hearsay testimony may well be viewed as proof of the fact allegedly recalled; namely, the fact that

Studlack had harassed Walker. Rule 803(3) does not permit the introduction of hearsay for this purpose, and it is difficult to imagine how fact finders could compartmentalize this proof to avoid conflating it as evidence of the underlying facts asserted.

Our concerns on this score are heightened by the fact that introduction of this evidence could erroneously lead jurors to conclude that C.O. Studlack's alleged verbal harassment of Walker, standing alone, in some fashion violated Walker's rights under the Eighth Amendment. It does not. Rather, it is clear that "generalized allegations of verbal harassment, standing alone, fail to state a valid Eighth Amendment claim." Farlow v. Conway, No. 3:20-CV-349, 2021 WL 5989789, at *4 (M.D. Pa. Aug. 5, 2021), report and recommendation adopted, No. CV 3:20-349, 2021 WL 5988570 (M.D. Pa. Dec. 17, 2021), and report and recommendation adopted sub nom. HASHIM FARLOW, Plaintiff v. B. CONWAY, Defendant, No. CV 3:20-349, 2021 WL 6123989 (M.D. Pa. Dec. 23, 2021). See also Mimms v. U.N.I.C.O.R., 386 F. App'x 32, 35 (3d Cir. 2010) (verbal harassment of a prisoner, without more, does not violate the Eighth Amendment); Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009) (verbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment).

Instead, in determining whether alleged sexual harassment of an inmate by correctional staff rises to the level of an Eighth Amendment violation, courts have adopted a subtle and multi-faceted approach, noting that:

> The scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact. But it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline. In context, including whether it violates established prison procedures, other sexualized touching may also be objectively serious.

Farlow, 2021 WL 5989789, at *4 (quoting Ricks v. Shover, 891 F.3d 468, 478 (3d Cir. 2018)). However, even if Walker's Eighth Amendment claims are cast in this broader fashion as prohibited sexual contact between correctional staff and an inmate, the fact remains that introduction of any prior hearsay state of mind declarations by Walker create a risk that the jury may confuse proof of Walker's state of mind with actual confirming evidence of the facts asserted by Walker as a hearsay declarant.

While we note these concerns for all parties, and refrain from opining regarding whether any other bases may exist to introduce this hearsay testimony at trial, we remain mindful of the fact that we should exercise caution when making pretrial evidentiary rulings and should often defer such questions until trial, when we

17

can make more fully informed assessments regarding the admissibility, probative value, and potentially unfair prejudice of specific proof.

This is the course we will follow in the instant case. Thus, we will deny the request to exclude Inmate Starks' testimony pursuant to Rule 37. We will, however, permit the defense to re-open discovery for the purpose of deposing Starks. As for the defendant's hearsay, relevance, and prejudice objections, we will defer ruling upon those questions until they are presented to us on a fully developed factual record.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTOINE WALKER,** | : | Civil No. 1:17-CV-2371 |
| **Plaintiff,** | : | |
| v. | : | (Magistrate Judge Carlson) |
| **C.O. STUDLACK,** | : | |
| **Defendant.** | : | |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, IT IS ORDERED that the Defendant's motion *in limine* to exclude the testimony of Alvin Starks (Doc. 121), is DENIED, in part, and DEFERRED in part as follows: We will deny the request to exclude Inmate Starks' testimony pursuant to Rule 37. We will, however, permit the defense to re-open discovery for the purpose of deposing Starks. As for the defendant's hearsay, relevance, and prejudice objections, we will defer ruling upon those questions until they are presented to us on a fully developed factual record.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

Dated:   February 1, 2022.