IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTOINE WALKER | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO 1:17-cv-02371 |
| v. | : |
| | : Magistrate Martin C. Carlson |
| C.O. STUDLACK | : |
| | : |
| Defendant. | : |

## PLAINTIFF ANTOINE WALKER'S TRIAL BRIEF

## I.     INTRODUCTION

Plaintiff Antoine Walker is an inmate who has sued Defendant Ralph Studlack, a former correctional officer, under 42 U.S.C. § 1983. According to Walker, Studlack assaulted him without provocation in violation of Walker's Eighth Amendment protection against the infliction of cruel and unusual punishment.

In accordance with Local Rule 39.7, Walker submits this trial brief.

## II.     WALKER'S EVIDENCE

Plaintiff Antoine Walker will be his own primary witness in this case. At trial, Walker will testify that since 2010 he has been an inmate incarcerated in the custody of the Pennsylvania Department of Corrections. In 2017, Walker was incarcerated at SCI-Coal Township, where Defendant Ralph Studlack worked as a correctional officer at that time.

9269750.1

Walker will testify that Studlack targeted him while he was incarcerated at SCI-Coal Township. Walker is openly bisexual, and Studlack made harassing comments to Walker with some frequency. In fact, another inmate who was incarcerated on the same block, Alvin Starks, will testify that Walker asked Starks for advice regarding how to deal with Studlack's harassment and mentioned that he planned to file a complaint against Studlack for sexual harassment under the Prison Rape Elimination Act ("PREA"). Starks will testify that Walker expressed that he wanted to be transferred from SCI-Coal Township because he feared Studlack. Starks will testify that Walker never expressed an intention to harm Studlack. To the contrary, Starks will testify that Walker appeared to be terrified of Studlack.

At some point after those conversations, Walker was placed in the Restrictive Housing Unit ("RHU") at SCI-Coal Township, in response to an incident in which Walker was caught kissing his boyfriend, a fellow inmate, while the two were in the prison yard. Eventually, Walker was released from the RHU back to the prison's general population. When he arrived back on his cell block, he realized that his old general population prison jump suits were no longer available.

Accordingly, on September 22, 2017, Corrections Officer Andrew McGary—who will testify at trial—authorized Walker to go to the prison laundry facility to pick up a set of prison clothing that matched his new housing assignment as part of the prison's general population. Walker was waiting for the new clothing

2

to be issued when Studlack arrived and accused Walker of loitering. Walker denied

that. After all, Officer McGary had authorized Walker to go to the laundry.

Regardless, Studlack proceeded to pat Walker down.

Walker claims that Studlack went way over the line during this interaction.

First, Studlack ordered Walker out of the laundry. As the two were walking out of

the laundry, Studlack began nudging Walker's arm. As he did, Studlack whispered

to Walker, "[Y]eah, say something, say something, so I can bash your head in and

nobody likes you. . . .  Nobody likes you faggot." Second, Studlack grabbed

Walker's genitals and buttocks as he patted Walker down. Studlack's actions

convinced Walker that Studlack was targeting him.

Corrections Officer Brian English will testify that he heard Studlack yelling

at an inmate to leave the prison laundry. English approached as Studlack was

patting Walker down. English will testify that Walker was accusing Studlack of

trying to rape him. When the pat down was finished, Walker tried to walk through

a separate gate, but English stopped him and directed Walker back to his housing

unit. At that point—English will testify—Walker accused English of trying to

prevent Walker from filing a PREA complaint against Studlack, who was standing

nearby as Walker uttered these words. English will testify that he did not have

issues with Walker in the past.

Immediately upon his return to his cell block, Walker asked for assistance in filing a PREA complaint against Studlack for his conduct during the pat down at the laundry. Both Sergeant Christopher Leonard and Unit Manager Kathleen Briscoe will testify at trial and confirm that Walker requested to file a PREA complaint against Studlack the same day as the incident in the prison laundry.

Walker filed a PREA complaint regarding Studlack's conduct in the laundry on September 22, 2017.[1] Walker also filed two grievances against Studlack related to the pat down that same day.[2] The grievance accused Studlack of saying, "I'll bash your head in and nothing will happen because nobody likes you." In the grievance, Walker also stated that he "feared for [his] life." The PREA complaint accused Studlack of saying, "Say something punk. Say something so I can bash your head. Nobody likes you faggot." The PREA complaint accused Studlack of inappropriately grabbing Walker's buttocks and genital area during the pat down.

A few days later, on September 26, 2017, Walker was passing through the prison's yard when Studlack called out to him. According to Walker, Studlack yelled out, "Walker, get your ass down here." When Walker approached him, Studlack said to him, "You thought PREA complaints are going to keep me from touching you?" Walker claims that at that point, Studlack reached out and touched

---

[1] Plaintiff's Exhibits 2 and 3.
[2] Plaintiff's Exhibit 1.

Walker's crotch. According to Walker, he pushed Studlack's hand away, at which point Studlack punched Walker in the face.

During the ensuing melee, Studlack deployed OC spray on Walker, multiple correctional officers tackled Walker, and Walker was eventually put in hand cuffs. While Walker was on the ground and unable to defend himself, Studlack approached the pile of officers and began twisting Walker's fingers.

Video footage from the prison does not capture the initial interaction between Walker and Studlack on September 26, 2017. Instead, the video only captures the events after Walker freed himself from Studlack's grasp. The footage, however, does show Studlack reaching into the pile once Walker was completely subdued by other correctional officials.[3]

Following the incident, Walker was taken to the prison's medical unit for treatment. He had a significant cut above his right eye and injuries to his wrists. He also needed to have OC spray flushed from his eyes. All of this is documented in the records from SCI-Coal Township's medical unit.[4] Walker was transferred to SCI-Frackville that same day. Upon his intake, a transfer medical screening noted

---

[3] Plaintiff's Exhibit 4.
[4] Plaintiff's Exhibit 6.

abrasions on Walker's face and wrists.[5] The next day, Walker was evaluated again and the same injuries were noted.[6]

A few days after his arrival, Walker filed another PREA complaint against Studlack. This one alleged that Studlack had assaulted Walker in retaliation for his filing of the earlier PREA complaint against Studlack.[7] Walker also filed a grievance regarding the September 26, 2017 incident.[8]

Walker will testify that the events of September 26, 2017 caused him mental distress in addition to the physical injuries he suffered. Walker requested mental health treatment on September 28, 2017, just two days after the incident.[9] By his estimation, he underwent mental health counseling more than twenty times following the assault by Studlack.

This evidence is sufficient to establish that Studlack violated Walker's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Studlack assaulted Walker, sprayed him with O.C. spray, and twisted Walker's fingers while he was subdued and defenseless. Studlack had no correctional justification for any of these actions. Instead, he undertook these actions in furtherance of sadistic motives to cause Walker pain. Walker suffered

---

[5] Plaintiff's Exhibit 7.
[6] Plaintiff's Exhibit 8.
[7] Plaintiff's Exhibit 9.
[8] Plaintiff's Exhibit 5.
[9] Plaintiff's Exhibit 10.

physical injuries to his face and hands as a result of Studlack's conduct. Likewise, Walker endured pain and suffering and mental distress as a result of Studlack's conduct.

### III.   LEGAL ISSUES

A.   <u>Alvin Starks's testimony will be relevant and admissible</u>.

In the memorandum opinion regarding Defendant's motion *in limine* to exclude the testimony of Alvin Starks, Your Honor expressed skepticism that Starks's testimony could be admissible in light of the general prohibition against hearsay testimony since Starks was not a witness to the events of September 26, 2017.[10] Admittedly, Starks did not witness the events of September 26, 2017. That, however, should not prohibit him from testifying, provided that such testimony is relevant and admissible.

Starks will testify regarding relevant points. As described above, it is Plaintiff's counsel's proffer that Starks will testify that he spoke with Walker at some point in the weeks before September 26, 2017. Starks will testify that during those conversations Walker expressed concerns about Studlack's harassment of him. Walker asked Starks for advice regarding how to deal with Studlack's harassment and suggested that he might file a PREA complaint against Studlack for sexual harassment. Starks will testify that Walker appeared to be terrified of

---

[10] (Doc. 151).

Studlack and indicated that he wanted to get moved out of SCI-Coal Township to get away from Studlack.

This evidence has several relevant purposes. Studlack's primary contention in this case is that Walker actually assaulted him and that Walker pre-meditated the incident. According to Studlack, he executed a legitimate pat down of Walker in the laundry on September 22, 2017, which upset Walker. According to Studlack's argument, Walker then filed a phony PREA complaint against Studlack to give him cover for an assault.

Starks's testimony, though rebuts that by showing that Walker was expressing concerns about Studlack before he ever filed his PREA complaint against Studlack. Starks's testimony also suggests that Walker was actually terrified and wanted to get as far away as possible from Studlack. Certainly, this is all relevant to rebut Studlack's arguments about Walker's alleged motive and plan to assault Studlack. And Walker's motive and plan—or lack thereof—is relevant to determine who initiated the scuffle: Studlack or Walker? *See* Fed. R. Evid. 401 (defining relevant evidence as evidence that "has *any* tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action") (emphasis added).

Studlack, though, claims that Starks's testimony that Walker told him Studlack harassed him is hearsay if it is admitted to prove that Studlack, in fact,

harassed Walker. But that isn't so, in light of Studlack's argument regarding Walker's motive. After all, such a prior consistent statement is not considered hearsay if it is offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Fed. R. Evid. 801(d)(1)(B)(i). Of course, to be admissible, the prior statement must have been made before the alleged motive to fabricate arose. *See Tome v. United States*, 513 U.S. 150, 158 (1995) (reinforcing "the requirement that the consistent statement must have been made before the alleged influence, or motive to fabricate, arose").

That is the case here. Starks will testify that his conversation with Walker occurred *before* Walker went to the RHU, thus establishing that Walker had concerns about Studlack's harassment before the incident in the laundry. And the incident in the laundry happened *after* Walker was released from the RHU. As a result, Walker's statement to Starks that Studlack had been harassing him is not hearsay.

But even if Walker's out-of-court statement to Starks were hearsay, the evidence would nonetheless be admissible under Rule 803(3)'s state of mind exception to the hearsay rule. This evidence demonstrates Walker's motive in filing the PREA complaint. That is, this evidence tends to show that Walker filed the PREA complaint because he felt Studlack was sexually harassing him, not

because he wanted to stage an opportunity to assault Studlack in retaliation for a legitimate pat-down of Walker in the laundry. Perhaps more importantly, Starks will testify that Walker communicated that he was terrified of Studlack.

Such out-of-court statements of the declarant's "motive" and "emotional . . . condition" are both explicitly recognized as bases for admitting hearsay evidence. Fed. R. Evid. 803(3). At least that is what the Third Circuit Court of Appeals has held. *See United States v. Gonzalez*, 905 F.3d 165, 200-201 (3d Cir. 2018). In *Gonzalez*, the Third Circuit affirmed a district court's decision to admit emails from a harassment victim to third parties under 803(3). *Id.* The victim's emails contained not only statements about the victim's emotional state, but also the factual circumstances that caused such an emotional state—*i.e.* the defendant's harassment of the victim. The court found that the emails fit "squarely" within the state of mind exception and allowed the admission of both the statements regarding the victim's emotional state and the factual circumstances that caused that. *Id.*

Starks's testimony will be similar to that of the emails in *Gonzalez*. He will testify regarding Walker's emotional state (that he was terrified of Studlack and wanted to get as far away as possible from him), and Studlack's acts (the harassment) that caused those emotions.

Your Honor's memorandum opinion also expressed concerns that such testimony might confuse the jury. But the evidence is highly probative in light of

Studlack's argument. If Your Honor excludes such evidence, Studlack will be permitted to argue that Walker filed the PREA complaint as part of his plan to attack Studlack, but Walker will be denied the opportunity to present evidence showing that he was actually terrified of Studlack. Viewed in this manner, it is clear that whatever the dangers of jury confusion they do not "substantially outweigh" the probative value of this evidence that rebuts Studlack's arguments regarding Walker's alleged motive, as required to exclude this evidence under Rule 403 of the Federal Rules of Evidence.

As a result, Starks should be permitted to testify.

B.    Walker adequately exhausted his administrative remedies.

Your Honor previously ruled that Walker had adequately exhausted his claim for compensatory damages—including emotional distress damages—as required by Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).[11] Studlack's counsel has indicted that Studlack wishes to have Your Honor re-visit that ruling. We believe Your Honor's prior ruling on this point was correct. *See Vo v. Wetzel*, 2021 WL 6197743 (W.D. Pa. Dec. 31, 2021); *accord Sides v. Pennsylvania Dep't of Corr.*, 2020 WL 1493549 (W.D. Pa. Mar. 27, 2020) (holding that inmate grievance need not "set[] forth a specific dollar amount").

---

[11] (*See* Doc. 152 at pgs. 9-12).

C.   <u>Opinions of Department of Corrections officials contained in the grievance documents must be excluded</u>.

Previously, Your Honor issued a memorandum opinion indicating that the Extraordinary Occurrence Report composed by a Department of Corrections Official does not appear to be admissible.[12] Specifically, Your Honor held that because the official who composed the report was not a witness to the events of September 26, 2017, then his opinions about what happened and whose version of the events should be believed would likely not be admissible in light of Rules 602, 701, and 403 of the Federal Rules of Evidence.

Similarly, Studlack has indicated that he intends to introduce into evidence materials from the investigation of the grievances that Walker filed against Studlack following the September 22 and September 26, 2017 incidents. Many of those documents, however, do not feature first-hand accounts of what occurred during those events, but instead are simply opinions of reviewing officers about whether Studlack or Walker should be believed regarding these events.

Accordingly, and for the same reasons expressed in Plaintiff's Motion *in Limine* to Exclude Evidence Regarding the Department of Corrections' Extraordinary Occurrence Report,[13] Walker requests that the Court exclude the opinions of Department of Corrections officials that appear in the following

---

[12] (*See* Doc. 149).
[13] (Doc. 119).

12

proposed Defense exhibits: 11, 12, 14, 16, 17, 18, 19, 20, 22, and 23. Of course, these exhibits might contain information regarding whether Walker has appropriately exhausted his administrative remedies. But the Department of Corrections officials' opinions about what occurred during the events of September 26, 2017 are not relevant to that issue and, therefore, should be redacted from these exhibits if Studlack is permitted to admit these exhibits into the evidentiary record at trial.

D.    Studlack's opinion of Walker's guilt in his medical records.

Through Defendant's Exhibit 3, Studlack intends to introduce his medical incident/injury report conducted after the September 26, 2017 physical altercation. That document contains a description of the events that Studlack purportedly made while receiving medical treatment following the incident. Specifically, Studlack stated, in response to a question about what had happened, "Inmate sucker punched me several times before I could call control." Such a statement seeking to ascribe guilt, however, constitutes inadmissible hearsay and should be excluded from evidence.

Federal Rule of Evidence 803(6) provides an exception to the prohibition on hearsay evidence for statements made for the purpose of medical diagnosis or treatment. To fall within this exception to the ban on hearsay, the statement in question must (1) be made for, and reasonably pertinent to, medical diagnosis or treatment, and (2) describe medical history, past or present symptoms or

13

sensations, their inception, or their general cause. Fed. R. Evid. 803(4). But statements claiming to describe "fault do not ordinarily qualify" for this hearsay exception. Fed. R. Evid. 803(4) advisory committee's notes; *accord Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 277 (5th Cir. 1991) (noting "[d]etails of the injury not necessary for treatment but serving only to suggest fault would not ordinarily qualify as an exception to the hearsay rule under Rule 803(4)) (internal quotation omitted); *see also Smith v. City of Philadelphia*, 2009 WL 3353148, at * 4 (E.D. Pa. Oct. 19, 2009) (finding "[s]tatements of fault or regarding the identity of assailants are inadmissible because they do not come within the Rule 803(4) exception.")

Here, Studlack seeks to introduce a statement within his medical incident/injury report that is outside Rule 803(4)'s exception. When describing his injury, Studlack was quoted as saying, "Inmate sucker punched me several times before I could call control."[14] This is a statement attempting to ascribe guilt, which does not concern Studlack's medical diagnosis or treatment. Accordingly, the statement is hearsay not within Rule 803(4)'s exception, and should be redacted.

## IV.   CONCLUSION

Thank you for Your Honor's consideration of these issues. We look forward to trial.

---

[14] Defendant's Exhibit 3.

14

Respectfully submitted,

BARLEY SNYDER, LLP

___/s/David Freedman_____
David J. Freedman, Esquire
Pa. Attorney I.D. No. 207257
dfreedman@barley.com
Caleb P. Setlock, Esquire
Pa. Attorney I.D. No. 330302
csetlock@barley.com
126 East King Street
Lancaster, PA  17602-2893
(717) 299-5201
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

The foregoing document, Plaintiff's Trial Brief, has been filed electronically on February 14, 2022, and is available for viewing and downloading on the ECF System.

Nicole DiTomo, Esq.
Senior Deputy Attorney General
Counsel for Defendant
Office of the Attorney General
1000 Madison Avenue, Suite 310
Norristown, PA 19403

BARLEY SNYDER, LLP

　　*/s/David J. Freedman*
David J. Freedman, Esquire
Pa. Attorney I.D. No. 207257
dfreedman@barley.com
Caleb P. Setlock, Esquire
Pa. Attorney I.D. No. 330302
csetlock@barley.com
126 East King Street
Lancaster, PA  17602-2893
(717) 299-5201
*Attorneys for Plaintiff*