IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ANTOINE WALKER, | : | No. 1:17-CV-2371 |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| C.O. STUDLACK | : | |
| Defendant. | : | Electronically Filed Document |

## TRIAL BRIEF OF DEFENDANT STUDLACK

Pursuant to this Court's Amended Case Management Order (Doc. 112) and Local Rule 39.7, Defendant Studlack, through undersigned counsel, hereby submits this Trial Brief.

**A.  STATEMENT OF EVIDENCE TO BE PRESENTED**

Plaintiff, Antoine Walker, alleges that Defendant Studlack used excessive force in violation of Walker's Eighth Amendment rights, which is actionable under 42 U.S.C. § 1983. This action stems from an incident that occurred at SCI-Coal Township in September 2017.

Studlack will testify that at all relevant times, he was working as a Corrections Officer/Maintenance Rover. For his specific post, he was responsible for patrolling, among other places, commissary, laundry, maintenance, and the loading docks to maintain security. His assignment, however, did not place him in a housing unit or other area that would provide him an opportunity to interact with the same inmate(s)

on a routine basis. The specific orders of his job post included, among other things, to ensure all exterior doors were secured; to make random unscheduled security rounds of the laundry, commissary, and maintenance areas; and to verify that only inmates permitted in these areas were present.

From the testimony of Walker, Officer McGary, Officer English, and Studlack, we will learn that on September 22, 2017 (a Friday), Walker was sent to the laundry unit by Officer McGary after an issue arose with Walker's laundry. After he arrived at the laundry area, Walker began to loiter outside, leaving an exterior door open, which is not permitted. During his initial security round of the compound, Studlack ordered Walker back into the building and to close the exterior door. Upon a second security round, at approximately 10:10am, Studlack noticed that the laundry door remained open and Walker continued to loiter outside.

Studlack will testify that he again ordered Walker inside and to close the exterior door. Walker refused the order. Studlack requested Walker's pass to determine if Walker was permitted to be in the area. This interaction, which occurred outside, garnered the attention of Officer English who walked over to the laundry door area when he heard Studlack giving orders to Walker.

At that time Studlack conducted a pat search of Walker because he did not produce his pass to be in the laundry area. While the pat search was being conducted in the presence of Officer English, Walker made allegations that he was being raped

and wanted to file a PREA complaint. Upon completion of the pat search, Studlack ordered Walker back to his housing unit. Officer English will testify that he followed Walker towards Gate 17 (English's assigned post area) and ordered Walker back to his housing unit as Walker attempted to walk through Gate 17 (the wrong direction).

After the event, Studlack filed Misconduct Report A920723 against Walker for refusing to obey an order, lying to an employee, and for being present in an unauthorized area. Upon return to his housing unit, Walker will testify that he requested to speak with the PREA Lieutenant in order to file a PREA complaint against Studlack for the pat search in the laundry area. He will also testify that he submitted a grievance identifying that Studlack threatened to do bodily harm. Additionally, Walker will testify that after receiving a copy of the misconduct at 4:55pm on September 22, 2017, he filed a second grievance claiming retaliation.

Studlack will testify that he ended his work day/week on September 22, 2017 and returned to the facility three days later, on September 25, 2017. Upon his return he continued working as the Maintenance Rover with the described duties. There were no interactions out in the compound between Studlack and Walker on September 25th.

On September 26, 2017, Walker will testify that he was present in the lower compound during morning inmate movement because he had a pass to go to medical. Walker will apparently testify that when he left medical, he walked through Gate 17

– the gate to move between the medical building and the housing units – and that is when Studlack called out to him. The credibility of this testimony will be challenged by Captain Scicchitano. He will testify that he was on duty as the Shift Commander and heard a call on the radio from Studlack requesting to have the CCTV cameras pointed to his area. Captain Scicchitano will explain that there were limited cameras in the facility at this time and if staff felt concerned they could always call to have a camera pointed in their direction.

Captain Scicchitano was in the command office at the time and began walking towards where Studlack was posted. Before walking through Gate 17 another call came over the radio for a Signal 13 – staff member needs immediate assistance. Captain Scicchitano will describe what he witnessed when he arrived on the scene, including the fact that Walker kept his hands under his body and refused orders to have handcuffs placed on him.

Captain Scicchitano will also be able to describe that when Walker left medical and stepped through Gate 17, he should have immediately turned right to begin down a path towards his housing unit. There was no other direction that Walker would have been permitted to go; however, Walker did not immediately turn down the path towards his housing unit and instead went more than 200 feet out of his way directly towards Studlack.

While Studlack will also testify that he called Walker over to him to check his pass, it was not when Walker was 200 feet away at Gate 17, but when Walker was much closer and appeared to be walking with kitchen workers towards the dining rooms – an unauthorized location for Walker as he was not a kitchen worker. Instead of providing his pass, Studlack will testify that Walker began punching him in the face. Studlack will testify that he was unable to break free of Walker's grasp until other officers arrived, and he was not able to return a punch.

Officer Jones will testify that he responded to the incident and ordered Walker to cuff up. Walker refused his orders and Officer Jones discharged a short burst of OC spray to regain compliance. At this point, Studlack was regaining his composure, realized that Walker was continuing to refuse orders to cuff up and Officer Studlack then discharged a short burst of OC spray to regain compliance.

Other officers began arriving at the scene, such as Staff person Amato and Captain Scicchitano. Instead of obeying orders, Walker is seen on video running from officers before being brought to the ground and handcuffed. Walker, Studlack, and several others were taken to medical for treatment. Walker was treated for a superficial laceration to his forehead and his eyes were decontaminated from the OC spray. He was then transferred to SCI-Frackville.

Upon his reception at SCI-Frackville, a medical intake was completed and medical staff noted a scratch above his left eyebrow; scratches on the left wrists with

no bleeding noted; and a slightly swollen right wrist with no bruising. Medical staff treated Studlack for a left temple hematoma, the size of a baseball; lacerations to his forehead and behind his ear; and abrasions to his elbows. In response to the altercation, Studlack filed a Misconduct Report C052510 against Walker. Walker, in turn, filed a third grievance against Studlack. This grievance, dated October 3, 2017 claims that Studlack used excessive force against him.

Despite Walker's contentions, Studlack will testify that he only had one prior interaction with Walker (in December 2016) where Walker was present in an authorized area and a misconduct was issued. Walker was in the RHU from May 1, 2017 through September 14, 2017. Studlack was not assigned to the RHU and would have had no ability to interact with Walker. Based on these facts, Mr. Studlack contends that he did not utilize excessive force and is not liable to Walker.

B. **SUMMARY OF ANTICIPATED LEGAL ISSUES**

Walker claims that Studlack violated his Eighth Amendment rights by using excessive force; however, the facts that will be presented at trial will not evidence that Studlack acted maliciously and sadistically as required to be found liable under the Eight Amendment. *See Tindell v. Beard*, 351 F. App'x 591, 596 (3d Cir. 2009).

> 1. **Any Force Used By Studlack Was Reasonable Under The Circumstances.**

The Third Circuit has held that "the pivotal inquiry in reviewing an inmate's § 1983 claim for excessive force is whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm." *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018). When analyzing the officer's intent, the court is to consider five factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." *Id*.

Studlack plans to present individuals to testify about, among other things, the environment of a correctional institution; how an officer is trained to respond to an inmate assault; the available methods or techniques an officer can utilize when exhibiting force; the reasonably perceived threat to the safety of staff and other inmates; efforts made to temper the severity of the amount of force used; and other first-hand knowledge of the underlying events that occurred on September 26, 2017. Studlack plans to present Megan Delpais, BSN, RN, and Acting Correctional Healthcare Administrator to testify about, among other things, the extent of the injuries inflicted. Based upon the evidence presented, Studlack asserts that he will be found not liable for any alleged violation of Walker's rights.

    **2.**    **Studlack May Be Entitled to Qualified Immunity Based on the Facts Presented by Walker at Trial.**

Government officials, such as Studlack, are liable under Section 1983 when they violate someone's constitutional rights, unless they are protected by qualified

7

immunity. *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). The qualified immunity inquiry contains two prongs: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). To determine whether a right was "clearly established" requires a court to conduct a two-part inquiry: (1) define the right allegedly violated at the appropriate level of specificity; and, (2) determine whether the right was clearly established at the time of its alleged violation. *Peroza-Benitez*, 994 F.3d at 165 (citations omitted). With respect to the second part of the inquiry, the court should look "to factually analogous Supreme Court precedent, as well as binding opinions from [their] own Court." *Id.*

(a.) <u>Mere use of OC spray does not constitute excessive force.</u>

Walker will apparently testify at trial that he never struck Studlack on September 26, 2017 and that Studlack deployed a burst of OC spray without justification. (*See* Doc. 134 pp. 3-4). If the facts presented at trial, including the review of the available video footage controvert Walker's testimony, this Court should rule, following a proper Rule 50(a) motion that Studlack is entitled to qualified immunity to the extent that Walker intends to argue that the mere use of OC spray constitutes excessive force in violation of the Eighth Amendment. The case law is clear that the use of chemical agents to subdue recalcitrant prisoners is

8

not cruel and unusual when reasonably necessary. *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. Dec. 30, 2020) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (4th Cir. 1984); *see also McMillan v. Walsh*, Case No. 2011-2223, 2014 WL 310386, *11 (M.D. Pa., Jan. 28, 2014) (concluding defendants were entitled to summary judgment since the evidence plainly refuted the assertion that they used excessive force because plaintiff's recalcitrant actions inspired the need for force, the force used was modest in scope, duration and intensity, and the officers did little more than administer a single short burst of OC spray in order to gain control of the plaintiff); and *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (court cannot accept a version of facts that was shown to be a visible fiction, contradicted by available video footage).

      (b.) <u>Application of handcuffs does not constitute excessive force.</u>

Similarly, Walker appears to contend that Studlack used excessive force by intentionally bending and twisting him while placing him in handcuffs. (*See* Doc. 134 at 4). If the facts presented at trial, including the review of the available video footage controvert Walker's testimony, this Court should rule that Studlack is entitled to qualified immunity to the extent that Walker intends to argue that the placement of handcuffs constitutes excessive force in violation of the Eighth Amendment. Binding authority in this circuit has acknowledged that government

officials, in certain instances, are entitled to qualified immunity for allegations relating to handcuffing. *See Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005).

### 3. Requested Damages Should Be Limited and Introduction of Medical Opinions and Treatment Should Be Denied.

Walker has identified that he plans to seek damages for the physical injuries from the altercation, the alleged mental health counseling received since the event, an unidentified amount of medical co-pays, and $50,000 in pain and suffering, plus attorney's fees and punitive damages. (*See* Doc. 134 at 6-7).

While Walker is permitted to testify as to his own perceptions of his injuries, he is not competent to offer a medical opinion about the treatment of those injuries or whether he suffers from any mental-health condition as a result of the underlying event. *Hall v. Berdanier*, 2013 WL 818603, *3 (M.D. Pa. Mar. 5, 2013); *see also* Fed.R.Evid. 803(4) (permitting the introduction of the statement made by the person seeking medical treatment – not the resulting medical opinion or diagnosis.) As such, any medical record introduced by Walker at trial should be properly redacted to exclude information containing medical opinions and treatment provided.

A jury should not be permitted to speculate about these matters. Because Walker does not plan to introduce the testimony of a competent medical professional to discuss his treatment for his physical and mental health concerns, testimony by Walker as to these matters should be denied and possible damages in this case, if liability is found, should be limited.

## C    CONCLUSION

For these reasons, Defendant Studlack will request that the jury find in his favor and dismiss the claims asserted against him.

<table>
<tr><td></td><td>Respectfully submitted,<br><br>JOSH SHAPIRO<br>Attorney General</td></tr>
<tr><td></td><td>By:   <i>s/ Nicole R. DiTomo</i><br>NICOLE R. DITOMO</td></tr>
<tr><td>Office of Attorney General<br>1000 Madison Avenue, Suite 310<br>Norristown, PA 19403<br>Phone: (610) 631-6205<br><br>nditomo@attorneygeneral.gov<br><br>Date: February 15, 2022</td><td>Senior Deputy Attorney General<br>Attorney ID: 315325<br><br>KAREN M. ROMANO<br>Chief Deputy Attorney General<br>Civil Litigation Section<br><br><i>Counsel for Defendant</i></td></tr>
</table>

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| ANTOINE WALKER, | : | No. 1:17-CV-2371 |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| C.O. STUDLACK | : | |
| Defendant. | : | Electronically Filed Document |

CERTIFICATE OF SERVICE

I, Nicole R. DiTomo, Senior Deputy Attorney General, Office of Attorney General, hereby certify that on February 15, 2022, I caused to be served a true and correct copy of the foregoing document titled Trial Brief to the following:

<u>VIA ECF</u>
David J. Freedman, Esquire
Caleb P. Setlock, Esquire
Barley Snyder
126 E. King Street
Lancaster, Pa 17602
Email: dfreedman@barley.com
Email:csetlock@barley.com
*Counsel for Plaintiff*

                                     *s/ Nicole R. DiTomo*
                                     NICOLE R. DITOMO
                                     Senior Deputy Attorney General